## UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF OKLAHOMA

CHRISTOPHER PERDUE,         )
                                      )
         Petitioner,        )
                                      )
v.                                )     Case No. 17-CV-0063-CVE-JFJ
                                      )
SCOTT CROW,              )
                                      )
         Respondent.     )

## OPINION AND ORDER

This matter is before the Court on petitioner Christopher Perdue's 28 U.S.C. § 2254 petition for writ of habeas corpus (Dkt. # 1). Perdue challenges the judgment and sentence entered against him in the District Court of Delaware County, Case No. CF-2012-470(B). Perdue filed a brief (Dkt. # 2) in support of his petition, respondent Scott Crow filed a response (Dkt. # 25) in opposition to the petition and provided state court records (Dkt. ## 25, 26) necessary to adjudicate the petition, and Perdue filed a reply brief (Dkt. # 27). As directed by the Court, Crow also filed a supplemental response (Dkt. # 30) addressing whether some or all of Perdue's claims may be moot given that Perdue was released from prison while this matter was pending. Having considered the parties' arguments, the case materials, and applicable law, the Court denies Perdue's request for an evidentiary hearing and dismisses, in part, and denies, in part, the petition.

### BACKGROUND

On December 19, 2012, law enforcement officers searched Perdue's home in Delaware County, under the terms of his probation in Delaware County Case No. CF-2009-97 ("the 2009 case"), after officers received a tip that Perdue might be manufacturing methamphetamine. Dkt. #

26-1, Tr. Preliminary Hr'g/Revocation Hr'g, at 3, 5-6.[1]   During the search, officers recovered drug paraphernalia and "a shake and bake lab," i.e., a plastic bottle containing what the officers suspected were ingredients necessary to manufacture methamphetamine.   Dkt. # 26-1, Tr. Preliminary Hr'g/Revocation Hr'g, at 7-9.  At the time of the search, Perdue's girlfriend, Zeffie Denny, and their four-year-old daughter were also in the home.  Dkt. # 26-1, Tr. Preliminary Hr'g/Revocation Hr'g, at 9-11.

The State of Oklahoma ("the state") filed an amended information in the District Court of Delaware County, Case No. CF-2012-470(B), on January 25, 2013, charging Perdue with one count each of endeavoring to manufacture a controlled dangerous substance (methamphetamine), in violation of OKLA. STAT. tit. 63, § 2-401(G)(1), and child endangerment by permitting presence at manufacture of controlled dangerous substance, in violation of OKLA. STAT. tit. 21, § 852.1(A)(2), both after former conviction of four felonies.  Dkt. # 26-7, Original Record ("O.R."), at 7-8.[2]

Perdue's case proceeded to a jury trial and the jury was selected on August 28, 2013.  Dkt. # 26-2, Tr. of Proceedings, at 1-2.  The Honorable Barry Denney, Associate District Judge, presided over the trial, and Kathy Baker, a court-appointed attorney, represented Perdue before and during the trial.  Dkt. # 26-3, Tr. Trial vol. 1, at 1; Dkt. # 26-1, Tr. Preliminary Hr'g/Revocation Hr'g, at

---

[1]    For consistency, the Court's citations refer to the CM/ECF header page numbers.

[2]    The State initially brought charges against Perdue through an information filed December 27, 2012.  Dkt. # 26-7, O.R., at 3-4.  The State filed the amended information following a preliminary hearing held on January 16, 2013.  At the conclusion of the preliminary hearing, the state district court found probable cause to bind Perdue over for trial.  Dkt. # 26-1, Tr. Preliminary Hr'g/Revocation Hr'g, at 21-22.  The state district court also found that Perdue violated the terms of his probation, granted the state's motion to revoke Perdue's suspended sentence in the 2009 case, and ordered Perdue to serve 10 years in prison in that case.  Dkt. # 26-1, Tr. Preliminary Hr'g/Revocation Hr'g, at 21, 23.

1-3.  Midway through the first day of trial, Perdue waived his right to a jury trial and entered a blind

plea of no contest.  Dkt. # 26-3, Tr. Trial vol. 1, at 75-76; Dkt. # 26-4, Tr. Trial vol. 2, at 1-2.  Before

accepting Perdue's plea, the trial court placed Perdue under oath and questioned him to ascertain

whether he understood the rights that he was waiving, whether it was his voluntary decision to forgo

his trial and enter a plea, and whether he understood the questions asked and answers provided on

his written plea form.  Dkt. # 26-4, Tr. Trial vol. 2, at 2-8; see also Dkt. # 26-7, O.R., at 9-16 (written

plea form).  Perdue verbalized his understanding of the consequences of entering a plea and pleaded

no contest to both charges.  Dkt. # 26-4, Tr. Trial vol. 2, at 5-8.  The court found that Perdue was

competent to enter his plea, found the evidence proffered by the State sufficient to support Perdue's

guilt as to both charges, and set the matter for sentencing.  Dkt. # 26-4, Tr. Trial vol. 2, at 4, 8-11.

Following a sentencing hearing on November 5, 2013, the trial court imposed a 35-year

prison sentence as to each conviction, ordered those sentences to be served concurrently with each

other and consecutively to the 10-year prison sentence Perdue was then serving in the 2009 case, and

further ordered that Perdue serve a one-year term of post-imprisonment supervision.  Dkt. # 26-5,

Tr. Sentencing Hr'g, at 52-53.  The trial court informed Perdue of his appeal rights and Perdue

indicated that he intended to file an appeal.  Dkt. # 26-5, Tr. Sentencing Hr'g, at 53.

Perdue timely moved to withdraw his plea, and a hearing was held on December 11, 2013.

Dkt. # 26-6, Tr. Mot. Hr'g, at 1.  Judge Denney presided over the hearing and Ken Gallon, a

court-appointed attorney, represented Perdue at the hearing.  Dkt. # 26-6, Tr. Mot. Hr'g, at 1-2.

After hearing testimony from Perdue and arguments from counsel,[3] the state district court denied

---

[3]     Perdue's plea/trial counsel, Kathy Baker, did not testify at the hearing on the motion to
withdraw the plea.  Dkt. # 25-2, OCCA Op., at 2 n.1.

Perdue's motion to withdraw his plea, finding that the record from the plea hearing and the court's own recollections demonstrated that Perdue understood the consequences of his plea and was competent to enter the plea.  Dkt. # 26-6, Tr. Mot. Hr'g, at 27-28.  The state district court then advised Perdue that he had a right to appeal the denial of the motion to withdraw the plea as well as the judgment and sentence entered against him as the result of his no contest plea.  Dkt. # 26-6, Mot. Hr'g, at 28-29.

Represented by court-appointed appellate attorney Ricki Walterscheid, Perdue filed a certiorari appeal in the Oklahoma Court of Criminal Appeals (OCCA), asserting three propositions of error. Dkt. # 25-1, Appeal Br., at 2.  Perdue claimed (1) he should have been allowed to withdraw his plea because the plea was not entered knowingly, intelligently, and voluntarily, (2) he was deprived of his right to the effective assistance of plea counsel because Baker (a) did not adequately advise Perdue about the consequences of his plea and the potential sentences and (b) pressured him to enter the plea, and (3) he received an excessive sentence that should be modified.  Dkt. # 25-1, Appeal Br., at 2, 16-17.  In an unpublished summary opinion filed October 17, 2014, in Case No. C-2013-1147, the OCCA rejected each proposition of error, affirmed the denial of Perdue's motion to withdraw his plea, and denied his certiorari appeal.  Dkt. # 25-2, OCCA Op., at 1-4.  Perdue did not seek further direct review by filing a petition for writ of certiorari in the United States Supreme Court.  Dkt. # 1, Pet., at 3.

Proceeding pro se, Perdue filed an application for postconviction relief in state district court on February 24, 2015.  Dkt. # 26-7, O.R., at 41.  In the application, Perdue raised five propositions for relief:  (1) that Judge Denney had a conflict of interest and should have recused himself from Perdue's criminal case, (2) that Baker performed deficiently and prejudicially by failing to advise

4

Perdue that he could seek Judge Denney's recusal, (3) that Baker performed deficiently and prejudicially by refusing to contest certain portions of Perdue's presentence investigation report, (4) that Baker performed deficiently and prejudicially by failing to explain the elements of endeavoring to manufacture methamphetamine to Perdue before he entered his no contest plea, and (5) that appellate counsel performed deficiently and prejudicially by failing to raise the four preceding claims on appeal. Dkt. # 26-7, O.R., at 42-49. Perdue filed a separate motion on February 24, 2015, requesting an evidentiary hearing on his ineffective assistance of trial and appellate counsel claims. Dkt. # 26-7, O.R., at 53-55.

In an order filed February 25, 2015, the state district court summarily denied Perdue's application for postconviction relief. Doc. 26-7, O.R., at 57. Perdue filed a postconviction appeal and, in an order filed April 10, 2015, in Case No. PC-2015-250, the OCCA remanded the matter to the state district court for further postconviction proceedings and preparation of an order detailing the state district court's findings of fact and conclusions of law. Dkt. # 26-7, O.R., at 67-70. On August 10, 2015, the state district court issued an order denying Perdue's request for an evidentiary hearing, setting forth findings of fact and conclusions of law, and denying Perdue's application for postconviction relief. Dkt. # 26-7, O.R., at 73-74. Following the remand, the OCCA issued an order on March 23, 2016, in Case No. PC-2015-783, affirming the denial of postconviction relief. Dkt. # 25-5, OCCA Order, at 1-5.

On January 6, 2017, Perdue filed the instant federal habeas petition (Dkt. # 1), a brief in support of the petition (Dkt. # 2), and a motion to proceed in forma pauperis (Dkt. # 3), in the United States District Court for the Western District of Oklahoma. The case was transferred to this Court on February 8, 2017. Dkt. # 9. In an order (Dkt. # 10) filed February 9, 2017, the Court denied

5

Perdue's motion to proceed without prepayment and directed Perdue to pay the $5 filing fee on or before March 13, 2017.  In an order (Dkt. # 11) filed April 24, 2017, the Court dismissed this action, without prejudice, for lack of prosecution and entered judgment against Perdue.  Perdue filed a motion for relief from judgment (Dkt. # 14), on August 29, 2018.  In an order (Dkt. # 16) filed August 31, 2018, the Court granted Perdue's motion, set aside the judgment, reopened the case, and reinstated the petition.

Respondent Scott Crow filed a response (Dkt. # 25) in opposition to the petition and submitted records of state court proceedings (Dkt. ## 25, 26) on December 10, 2018.  Perdue filed a reply brief (Dkt. # 27) on January 2, 2019.  In an order (Dkt. # 29) filed March 25, 2021, the Court took judicial notice that Perdue had been released from state custody and directed Crow to file a supplemental response addressing whether Perdue's release mooted any of his habeas claims.  As directed, Crow filed a supplemental response (Dkt. # 30) on April 7, 2021.

## *DISCUSSION*

In his petition, Perdue identifies nine claims to support his request for federal habeas relief: The three claims he raised in his certiorari appeal:

- that his plea was not knowing and voluntary (claim one),

- that Baker provided ineffective assistance by failing to adequately advise Perdue of the consequences of his plea and by pressuring him to enter the plea (claim two), and

- that his sentence is excessive and should be modified (claim three);

The five claims he raised in his application for postconviction relief:

- that he was deprived of his constitutional right to the effective assistance of appellate counsel (claim four),

- that Judge Denney should have recused due to a conflict of interest (claim five),

- that Baker provided ineffective assistance by failing to advise Perdue he could seek Judge Denney's recusal (claim six),

- that Baker provided ineffective assistance by refusing to challenge certain portions of the presentence investigation report (claim seven), and

- that Baker provided ineffective assistance by failing to explain to Perdue the elements of the charge of manufacturing before he entered his plea (claim eight); and

One claim he raised for the first time on postconviction appeal:

- that the district court abused its discretion when it denied his request for an evidentiary hearing regarding his postconviction claims (claim nine).

Dkt. # 1, Pet., at 5-20; Dkt. # 2, Pet'r's Br. at 4-31.

Crow contends that Perdue is not entitled to federal habeas relief because some claims are moot now that Perdue has completed his sentences and has been released from state custody, claim nine fails to state a cognizable habeas claim, and 28 U.S.C. § 2254(d) bars relief on his remaining claims. Dkt. ## 25, 30.

## I.     Mootness and cognizability

Crow contends that claim three, part of claim four, claim seven and part of claim nine are moot because these claims, in whole or in part, challenge Perdue's now-completed sentences.  Dkt. # 30, Supp. Resp., at 6.  Alternatively, Crow contends that claim nine, in its entirety, fails to state a federal claim because it alleges an error of state law.  Dkt. # 25, Resp., at 26-27; Dkt. # 30, Supp. Resp., at 6 n.4.

The Court agrees, in part, with Crow's contentions.  When a state prisoner seeks federal habeas relief from a criminal judgment imposed in state court, 28 U.S.C. § 2254 governs this Court's review of the prisoner's habeas petition.  Under 28 U.S.C. § 2254(a), a federal court has jurisdiction to grant federal habeas relief only if the petitioner shows that he is "in custody pursuant to the judgment of a State court" and that he is "in custody in violation of the Constitution, laws or treaties of the United States."  The first "in-custody" requirement focuses on the petitioner's status, whereas the second focuses on the substance of the petitioner's claims.  Calhoun v. Att'y Gen. of Colo., 745 F.3d 1070, 1074 (10th Cir. 2014); Kirby v. Janecka, 379 F. App'x 781, 782-83 (10th Cir. 2010) (unpublished).[4]   The petitioner must satisfy the status requirement "at the time the habeas petition is filed."  Mays v. Dinwiddie, 580 F.3d 1136, 1139 (10th Cir. 2009).  "Federal courts have no jurisdiction to consider § 2254 petitions unless the petitioner is in custody pursuant to [the] challenged conviction when the petition is filed."  Garey v. Ulibarri, 332 F. App'x 445, 446 (10th Cir. 2009) (unpublished) (citing Erlandson v. Northglenn Mun. Court, 528 F.3d 785, 788 (10th Cir. 2008)).  Under the substance requirement, federal courts may not grant habeas relief if the

---

[4]        The Court cites this unpublished decision, and other unpublished decisions herein, as persuasive authority.  See FED. R. APP. P. 32.1(a); 10th Cir. R. 32.1(A).

petitioner's claim alleges only an error of state law because "it is only noncompliance with *federal*

law that renders a State's criminal judgment susceptible to collateral attack in the federal courts."

Wilson v. Corcoran, 562 U.S. 1, 5 (2010) (emphasis in original).

In addition to § 2254(a)'s requirements, Article III of the United States Constitution limits

federal court jurisdiction to "actual, ongoing cases or controversies." Lewis v. Continental Bank

Corp., 494 U.S. 472, 477 (1990). In the context of a federal habeas action, "[a]n incarcerated

convict's (or a parolee's) challenge to the validity of his conviction always satisfies the

case-or-controversy requirement, because the incarceration (or the restriction imposed by the terms

of the parole) constitutes a concrete injury, caused by the conviction and redressable by invalidation

of the conviction." Spencer v. Kemna, 523 U.S. 1, 7 (1998). "Article III's case-or-controversy

requirement applies at all stages of litigation" and "[w]hen circumstances change, extinguishing a

party's interest in the case, it becomes moot and is subject to dismissal." Romero v. Goodrich, 480

F. App'x 489, 491 (10th Cir. 2012) (unpublished).

A federal habeas action, or at least some of the petitioner's individual claims, may become

moot if the petitioner completes his sentences and is released from state custody while the action is

pending. See Spencer, 523 U.S. at 3, 7 (noting, in a case involving a challenge to the state's

revocation procedures, that "[o]nce the convict's sentence has expired . . . some concrete and

continuing injury other than the now-ended incarceration or parole-some 'collateral consequence'

of the conviction-must exist if the suit is to be maintained."); Romero, 480 F. App'x at 491 (noting

that a habeas action may become moot upon the petitioner's release from custody); Kirby, 379 F.

App'x at 783 (noting that "even if a petitioner's claims satisfy both the status and substance

requirements, those claims may become moot if . . . the petitioner has completed his sentence for the

challenged conviction"). Nevertheless, federal courts presume the existence of "sufficient collateral consequences when a defendant who has already served his sentence appeals the propriety of his initial conviction." United States v. Meyers, 200 F.3d 715, 718 (10th Cir. 2000). And that presumption applies in the context of a federal habeas action when a petitioner who has completed his sentence and is no longer in state custody raises federal claims challenging the validity of his conviction. Kirby, 379 F. App'x at 783.

A.   **Excessive sentences (dismissal of claim three)**

Here, Perdue was in state custody, under the challenged judgment and sentence, when he filed his petition in 2017. Dkt. # 1, Pet., at 1, 25. At that time, all claims asserted in the petition satisfied Article III's case-or-controversy requirement and § 2254(a)'s "in-custody" status requirement. Spencer, 523 U.S. at 7-8; Mays, 580 F.3d at 1139. But Perdue's circumstances changed while the petition was pending. The Governor of Oklahoma commuted Perdue's sentences to a ten-year term on January 15, 2020, the Oklahoma Department of Corrections released Perdue from custody on January 27, 2020, and Perdue completed his one-year term of post-imprisonment supervision on January 26, 2021. Dkt. ## 30-1, 30-2, 30-3. Under these facts, claim three is moot

because that claim challenges Perdue's commuted and completed sentences as excessive.  The Court

therefore dismisses the petition, in part, as to claim three.[5]

The Court disagrees, however, with Crow's contention that claim seven and part of claim

four are moot.  Those claims allege that trial counsel was ineffective for failing to challenge alleged

errors in the presentence investigation report, resulting in the imposition of harsher sentences (claim

seven), and allege that appellate counsel was ineffective for, inter alia, failing to argue that trial

counsel was ineffective for failing to contest certain charges in the presentence investigation report

(part of claim four).  Dkt. # 1, Pet., at 8, 16; Dkt. # 2, Pet'r's Br., at 12-16, 25-27.  While these

claims indirectly touch on sentencing matters, they nevertheless challenge Perdue's conviction by

alleging the denial of his Sixth Amendment right to the effective assistance of counsel at trial and

on appeal.  Assuming that Perdue could prove that either counsel performed deficiently and

prejudicially with respect to sentencing issues, the fact that Perdue has now completed his sentences

would not necessarily moot his claims that trial counsel was ineffective for failing to challenge errors

in the presentence investigation report before the sentences were imposed, or that appellate counsel

was ineffective for failing to argue that trial counsel was allegedly deficient and ineffective on this

point shortly after he began serving those sentences.  The Court therefore declines to dismiss as moot

claim seven and the part of claim four relating to claim seven.

---

[5]     As Crow notes, claim three also appears to be subject to dismissal for failure to present a
cognizable habeas claim because sentencing decisions are matters of state law and claims
that challenge the length of a criminal sentence ordinarily do not present cognizable habeas
claims unless the challenged sentences are unauthorized by state law.  Dkt. # 25, Resp., at
14; see Dockins v. Hines, 374 F.3d 935, 940 (10th Cir. 2004); Dennis v. Poppel, 222 F.3d
1245, 1258 (10th Cir. 2000).  But even assuming claim three could be construed as a
cognizable habeas claim, that claim is moot because Perdue's sentences were commuted and
he has served his sentences in their entirety, including the term of post-imprisonment
supervision.  Dkt. # 30, Supp. Resp., at 6.

**B.      Refusal to grant postconviction evidentiary hearing (dismissal of claim nine)**

In claim nine, Perdue alleges he is entitled to federal habeas relief because the state district court did not grant his request for an evidentiary hearing as to the claims that he raised in state postconviction proceedings and the OCCA did not address his request for an evidentiary hearing. Dkt. # 1, Pet., at 20; Dkt. # 2, Pet'r's Br., at 29-31.[6]  Crow contends that claim nine is moot, to the extent that claim relates to any claims challenging Purdue's sentences.  Dkt. # 30, Supp. Resp., at 6 n.4.  In the alternative, Crow contends that claim nine alleges an error of state law and thus fails to state a cognizable habeas claim.  Dkt. # 25, Resp. 26-27.  The Court finds it unnecessary to consider whether claim nine is moot, either in whole or in part, because the Court agrees with Crow that claim nine does not state a cognizable habeas claim.  See Sellers v. Ward, 135 F.3d 1333, 1339 (10th Cir. 1998) ("[B]ecause the constitutional error [the petitioner] raises focuses only on the State's post-conviction remedy and not the judgment which provides the basis for his incarceration, it states

---

[6]      In claim four, Perdue appears to allege that appellate counsel was ineffective for failing to raise claim nine.  Dkt. # 2, Pet'r's Br., at 16.  But his inclusion of claim nine as a basis for appellate counsel's ineffectiveness appears to be inadvertent, as that was not part of the ineffective-assistance-of-appellate-counsel claim ("IAAC claim") that he presented in state court.  See Dkt. # 25-5, OCCA Order, at 2-4 (identifying only four claims that Perdue asserted should have been raised on appeal).  In any event, to the extent Perdue asserts, in claim four, that appellate counsel was ineffective for failing to raise claim nine—i.e., for failing to argue on appeal that the state district court or the OCCA should have held an evidentiary hearing in postconviction proceedings held subsequent to the appeal—the Court agrees with Crow that appellate counsel could not have predicted that Perdue's postconviction request for an evidentiary hearing would be denied and thus could not be ineffective for failing to raise claim nine.  That portion of claim four is therefore denied on the merits.  In the analysis of claim four, the Court will address the IAAC claim only as it was presented in Perdue's application for postconviction relief, with four grounds for appellate counsel's alleged ineffectiveness (identified in the petition as claims five through eight).

no cognizable federal habeas claim."). The Court therefore dismisses the petition, in part, as to claim nine.

Lastly, as Crow contends, neither the commutation nor the completion of Perdue's sentences mooted his federal claims that challenge the validity of his convictions. Dkt. # 30, Supp. Resp., at 4-5; see Spencer, 523 U.S. at 7; Kirby, 379 F. App'x at 783; see also Hemphill v. State, 954 P.2d 148, 151 (Okla. Crim. App. 1998) (explaining that, under Oklahoma law, a commutation of a sentence does not affect the conviction itself). The Court therefore proceeds to consider Crow's argument that 28 U.S.C. § 2254(d) bars relief as to Perdue's remaining claims.

## II.    28 U.S.C. § 2254(d)

Perdue presented each of his remaining claims to the OCCA, either through his certiorari or postconviction appeal, and the OCCA rejected each claim on the merits.

### A.    Standard of review

When, as here, a state court has adjudicated the merits of the petitioner's federal claims, a federal court may grant habeas relief only if the petitioner first demonstrates that the state court's adjudication of those claims either "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law," 28 U.S.C. § 2254(d)(1), or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding, id. § 2254(d)(2).

As used in § 2254(d)(1), the phrase "clearly established Federal law" means "the governing legal principle or principles" stated in "the holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time of the relevant state-court decision." Lockyer v. Andrade, 538 U.S. 63, 71-72 (2003) (quoting Terry Williams v. Taylor, 529 U.S. 362, 412 (2000)). A state court's

decision is contrary to clearly established Federal law only "if: (a) 'the state court applies a rule that contradicts the governing law set forth in Supreme Court cases'; or (b) 'the state court confronts a set of facts that are materially indistinguishable from a decision of the Supreme Court and nevertheless arrives at a result different from [that] precedent.'" House v. Hatch, 527 F.3d 1010, 1018 (10th Cir. 2008) (quoting Maynard v. Boone, 468 F.3d 665, 669 (10th Cir. 2006)).  Notably, the state court need not mention, or even be aware of, governing Supreme Court cases, "so long as neither the reasoning nor the result of the state-court decision contradicts them."  Early v. Packer, 537 U.S. 3, 8 (2002).

When the state court's decision "'identifies the correct governing legal principle' in existence at the time," the only question under § 2254(d)(1) is "whether the decision 'unreasonably applies that principle to the facts of the prisoner's case.'"  Cullen v. Pinholster, 563 U.S. 170, 182 (2011) (quoting Terry Williams, 529 U.S. at 413).  To establish that the decision resulted from an objectively unreasonable application of the law, a petitioner must show something more than an erroneous application of the law.  Rather, the petitioner "must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement."  Harrington v. Richter, 562 U.S. 86, 103 (2011).

A petitioner may also challenge the reasonableness of factual underpinnings of the state court's decision.  Under § 2254(d)(2), a petitioner must show that the state court's decision is based on "an unreasonable determination of the facts" that were developed in the state court proceeding.  "A state-court decision unreasonably determines the facts if the state court 'plainly misapprehend[ed] or misstate[d] the record in making [its] findings, and the misapprehension goes to a material factual

issue that is central to petitioner's claim.'" Wood v. Carpenter, 907 F.3d 1279, 1289 (10th Cir. 2018) (quoting Byrd v. Workman, 645 F.3d 1159, 1170-72 (10th Cir. 2011)).  But "a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance."  Wood v. Allen, 558 U.S. 290, 301 (2010). Rather, under § 2254(d)(2), the reasonableness of a factual determination is also measured by Richter"s fairminded-disagreement standard.  Dunn v. Madison, 138 S. Ct. 9, 12 (2017).

Together, both subsections of § 2254(d) set a high bar but "stop[] short of imposing a complete bar on federal-court relitigation of claims already rejected in state proceedings."  Richter, 562 U.S. at 102.  Congress made § 2254(d)'s standards "difficult to meet" for a reason: "to confirm that state courts are the principal forum for asserting constitutional challenges to state convictions." Id. at 102-03; see also Mays v. Hines, 141 S. Ct. 1145, 1149 (2021) (per curiam) (reiterating that "if [Richter's] rule means anything, it is that a federal court must carefully consider all the reasons and evidence supporting the state court's decision" and that the federal court may not disturb the state court's decision "without identifying—let alone rebutting—all of the justifications" that may support that decision).[7]  In contrast, federal habeas courts provide a forum for state prisoners to obtain relief only from "extreme malfunctions in the state criminal justice systems."  Richter, 562 U.S. at 102.

Finally, even if a petitioner meets § 2254(d)'s demanding standards, the petitioner is not automatically entitled to federal habeas relief.  Milton v. Miller, 744 F.3d 660, 670 (10th Cir. 2014). Instead, the petitioner is merely entitled to have the federal court review his claims de novo, without deference to the state court's decision.  Id. at 670-71.  In that situation, the federal court must

---

[7]     In addition, a federal court must presume the correctness of the state court's factual findings unless the petitioner rebuts that presumption "by clear and convincing evidence."  28 U.S.C. § 2254(e)(1).

independently determine whether any alleged constitutional errors occurred and, if so, whether those errors are harmless "under the 'substantial and injurious effect' standard set forth in Brecht [v. Abrahamson, 507 U.S. 619, 631 (1993)]." Fry v. Pliler, 551 U.S. 112, 121 (2007).

### B.   Evidentiary hearing

Before analyzing Perdue's claims under § 2254(d), the Court must consider his request for an evidentiary hearing.   Perdue asserts that a hearing is necessary to show that the OCCA's adjudication of his claims resulted in a decision that is based on an unreasonable determination of the facts under § 2254(d)(2). Dkt. # 2, Pet'r's Br., at 31; Dkt. # 27, Reply Br., at 2-3, 8.   However, because Crow contends that § 2254(d) bars relief on Perdue's claims, the Court must first analyze Perdue's claims under § 2254(d)'s deferential framework based on the existing state-court record. Pinholster, 563 U.S. at 185 & n.7 (2011); Smith v. Aldridge, 904 F.3d 874, 886 & n.6 (10th Cir. 2018).   In Smith, the United States Court of Appeals for the Tenth Circuit recognized that "the procedures a state court employs to make factual determination," such as making a factual determination without holding an evidentiary hearing, "can affect the reasonableness of the [state] court's subsequent factual determinations." Smith, 904 F.3d at 882.   But Smith cautioned that "a state court's decision not to hold an evidentiary hearing only renders its factual findings unreasonable [under § 2254(d)(2)] if all '[r]easonable minds' agree that the state court needed to hold a hearing in order to make those factual determinations." 904 F.3d at 883 (quoting Brumfield v. Cain, 576 U.S. 305, 314 (2015)).

In other words, Smith reaffirms that the federal habeas court's primary task is to determine the reasonableness of the state court's decision based on the facts that were presented in state court. In performing that task, the federal habeas court may evaluate the reasonableness of the state court's

decision by considering whether all reasonable minds would agree that the state court's fact-finding process was inadequate due to the failure to hold an evidentiary hearing.  Smith, 904 F.3d at 883. But the Tenth Circuit made clear that its decision in Smith "does not require state courts to hold evidentiary hearings in all, or even most, cases," "[n]or does it suggest petitioners can easily escape [§ 2254(d)'s] deferential standard because the state court denied their request for an evidentiary hearing."  Smith, 904 F.3d at 883.  Rather, as Smith stated, "most of the time . . . it will be reasonable for a state court to make factual determinations based on the evidence before it without holding a hearing."  Id.

In short, if Perdue makes a threshold showing that the OCCA either unreasonably applied the law or unreasonably determined the facts, on the basis of the existing state-court record and in light of the fact that neither state court held an evidentiary hearing, then the Court will consider whether an evidentiary hearing is necessary for this Court to review Perdue's claims de novo.

### C.    Analysis

#### 1.    Invalid plea (claim one)

Perdue claims the State obtained his convictions, in violation of his right to due process, because his no contest plea was not knowing and voluntary.  Dkt. # 1, Pet., at 5; Dkt. # 2, Pet'r's Br., at 4-10.  To support this claim, Perdue alleges (1) that he did not fully understand the range of punishment that could be imposed, including the fact that any sentences imposed could be ordered to be served consecutively, either to each other or to the 10-year suspended sentence in the 2009 case that he was serving when he entered the plea, and (2) that he made a "hasty decision" to enter the no contest plea because plea counsel pressured him to do so.  Dkt. # 2, Pet'r's Br., at 4-10.  Perdue raised this claim on certiorari appeal, and the OCCA rejected it, stating,

> [W]e find that Perdue indicated, during the plea hearing, that he was entering his plea without coercion from anyone, including trial counsel. He was fully advised of the consequences of his plea by the use of the guilty plea summary of facts. The record provides ample indication that Perdue's pleas were entered knowingly and voluntarily. See Fields v. State, 1996 OK CR 35, ¶ 38, 923 P.2d 624, 631-32. We find that the trial court did not abuse its discretion in failing to allow him to withdraw the plea based on this issue, as Perdue did not meet his burden in this case. Elmore v. State, 1981 OK CR 8, ¶ 8, 624 P.2d 78, 80; see Hatch v. State, 1996 OK CR 37, ¶ 57, 924 P.2d 284, 296 (presumption of correctness of proceedings); also see Wynn v. Page, 1965 OK CR 153, ¶ 10, 408 P.2d 558, 559 ("Every presumption favors regularity of criminal proceedings in trial court, and we can not [sic] accept as facts the mere assertions of a petitioner, without any proof of the correctness of such assertions.").

Dkt. # 25-2, OCCA Op., at 2-3 (footnote omitted).

Perdue argues that the OCCA's decision on this claim is objectively unreasonable because he testified at the hearing on the motion to withdraw his plea that he did not understand the consequences of entering the no contest plea, particularly as to the range of punishment and potentially consecutive sentences, and that plea counsel pressured him to enter the plea. Dkt. # 2, Pet'r's Br., at 9.

To comport with due process, a plea must be knowing, voluntary and intelligent. Brady v. United States, 397 U.S. 742, 747-78 (1970); Boykin v. Alabama, 395 U.S. 238, 242 (1969); see also Hill v. Lockhart, 474 U.S. 52, 56 (1985) (noting that a plea is valid if it "represents a voluntary and intelligent choice among the alternative courses of action open to the defendant" (quoting North Carolina v. Alford, 400 U.S. 25, 31 (1970))). At a minimum, for a plea to be knowing and intelligent, the defendant must understand the nature of the charges against him, the possible penalties, and the fact that he is waiving several constitutional rights by entering a plea. Brady, 397 U.S. at 756-57; Boykin, 395 U.S. at 242-44; see also United States v. Hurlich, 293 F.3d 1223, 1230 (10th Cir. 2002) ("The defendant need not understand every collateral consequence of the plea, but

need only understand its direct consequences."); Cunningham v. Diesslin, 92 F.3d 1054, 1061 (10th Cir. 1996) ("An attorney's erroneous sentence estimate . . . does not render a plea unknowingly made."). A defendant's decision to enter a plea must also be voluntary; thus, a plea is constitutionally infirm if it is the product of coercion. See Euziere v. United States, 249 F.2d 293, 295 (10th Cir. 1957) ("A plea of guilty interposed as the result of coercion is not consistent with due process and therefore a judgment and sentence imposed pursuant to such a plea cannot stand.").

The OCCA applied these principles and determined that the facts in the record did not support Perdue's assertion that his plea was not knowing and voluntary. The record demonstrates that the OCCA's decision is objectively reasonable. As previously discussed, Perdue waived his right to a jury trial on the first day of his trial and entered a blind plea of no contest. Dkt. # 26-3, Tr. Trial vol. 1, at 75-76; Dkt. # 26-4, Tr. Trial vol. 2, at 1-2. Before he entered his plea, he completed and signed a written plea form with the assistance of his plea counsel, Kathy Baker. Dkt. # 26-7, O.R., at 9-16. By signing the form, Perdue indicated that he read and understood the form, that he understood the nature of the charges against him and the consequences of the plea, that he was not taking any medications that could influence his ability to understand the proceeding, and that he understood, and discussed with his lawyer, the rights he would be waiving by entering a plea. Dkt. # 26-7, O.R., at 9, 12, 14. Perdue also indicated on the written form that he was entering the plea of his "own free will and without any coercion or compulsion of any kind." Dkt. # 26-7, O.R., at 13.

Before accepting Perdue's plea, the trial court placed Perdue under oath and questioned him to ascertain whether he understood the rights he was waiving, whether it was his voluntary decision to forgo his trial and enter a plea, and whether he understood the questions asked and answers provided on his written plea form. Dkt. # 26-4, Tr. Trial vol. 2, at 2-8. The trial court specifically

questioned whether Perdue understood that if he pleaded no contest and the court found a factual basis to support each charge, the court would find him guilty and could impose any sentence between 21 years to life imprisonment for endeavoring to manufacture methamphetamine and any sentence between four years to life imprisonment for endangering a child.  Dkt. # 26-4, Tr. Trial vol. 2, at 5-8. Perdue verbalized his understanding of the consequences of entering a plea and pleaded no contest to both charges.  Dkt. # 26-4, Tr. Trial vol. 2, at 5-8.  The trial court found that Perdue was competent to enter his plea, found the evidence proffered by the State sufficient to support Perdue's guilt as to both charges, and set the matter for sentencing.  Dkt. # 26-4, Tr. Trial vol. 2, at 4, 8-11; Dkt. # 26-7, O.R., at 15.

During the subsequent hearing on his motion to withdraw the plea, Perdue testified, under oath, that he reviewed the written plea form with Baker before entering his no contest plea, that he did "not fully" understand the form, and that he "wasn't really paying attention to what she was saying because it was all in a hurry."  Dkt. # 26-6, Tr. Mot. Hr'g, at 3, 5, 14.  Specifically, he testified he did not understand "[a]bout the running consecutive," that the court could impose a life sentence, or "anything really because it was in the middle of a trial . . . and [Baker] kept more or less begging [him] to take the blind plea or whatever and [he] thought fine" because he "wasn't really thinking."  Dkt. # 26-6, Tr. Mot. Hr'g, at 3-5, 10-12.  Perdue testified that Baker told him that by entering a plea of no contest he was not admitting guilt but rather admitting "there might be enough evidence to convict" him and that Baker "said that [he] probably wouldn't get as much as time as the [district attorney] offered [him] if [he] took the blind plea."  Dkt. # 26-6, Tr. Mot. Hr'g, at 4, 9, 14.  Perdue testified that he had two reasons for moving to withdraw his plea: (1) he did not understand that he could receive up to two consecutive life sentences, and (2) he felt like Baker

20

pressured him to enter a plea, was ineffective for failing to tell him he could get two consecutive life sentences, and did not confirm that he understood the written plea form. Dkt. # 26-6, Tr. Mot. Hr'g, at 7-8, 11.  On cross-examination, Perdue admitted that he did not receive two consecutive life sentences, but testified that he did not understand before entering his blind plea that the court would order his two, concurrent 35-year sentences to be served consecutively to the 10-year sentence he was serving following the revocation of his suspended sentence in the 2009 case. Dkt. # 26-6, Tr. Mot. Hr'g, at 12-13.  Perdue also testified that he felt rushed by Baker when they completed the written plea form, that he only "[v]aguely" remembered talking to the judge about the plea form when he entered his no contest plea, and that he did not "recall really anything that [the judge] said" during the plea hearing.  Dkt. # 26-6, Tr. Mot. Hr'g, at 15-16.

After hearing testimony from Perdue and arguments from counsel,[8]  the same state district court judge who accepted Perdue's no contest plea, denied Perdue's motion to withdraw his plea, stating:

> All right.  Mr. Perdue, I've read the transcript of the plea that was entered, the no contest plea that you entered, I've listened to the evidence today, I've gone over that summary of facts and plea of no contest.  I am satisfied that you did understand your rights the day that you just changed your mind and decided rather than proceeding with the jury trial, that you wished to enter a no contest plea.  I'm also satisfied that you understood the range of punishment that you could receive and I'm satisfied, as I said, that you understood all of your rights in making the decision and I'm satisfied that you were competent that day also as the Court went through a number of questions with you when you made this decision rather than continuing with the jury trial to enter a no contest plea which I'm also satisfied you understood what that—by entering that no contest plea the Court did explain to you that with any—with the evidence the state would announce that they could put on if the Court was convinced that that would be enough to convict you, that the Court would in fact find you guilty. That was very clearly explained to you at that time, and I'm satisfied that you

---

[8]      Perdue's trial/plea counsel, Kathy Baker, did not testify at the hearing on Perdue's motion to withdraw the plea.  Dkt. # 25-2, OCCA Op., at 2 n.1.

understood that.  So on that basis then, I'm denying your request today to withdraw
your guilty plea.

Dkt. # 26-6, Tr. Mot. Hr'g, at 27-28.

As just discussed, there is ample support in the record—both from the plea hearing and the

subsequent hearing on the motion to withdraw the plea—for the OCCA's determination that

Perdue's decision to plead no contest was knowing and voluntary.  Significantly, while they are not

conclusive on the question of whether his plea satisfies due process, Perdue's in-court statements

made during the plea hearing as to the knowing and voluntary nature of his pleas are accorded a

strong presumption of reliability.  See Blackledge v. Allison, 431 U.S. 63, 73-74 (1977).  On the

record presented, the Court finds and concludes that the OCCA's rejection of Perdue's challenge to

the constitutional validity of his plea was neither contrary to nor based an unreasonable application

of clearly established federal law and was not based on an unreasonable determination of the facts.

The Court therefore denies the petition as to claim one.

### 2.    Ineffective assistance of plea counsel (claim two)

Next, Perdue claims that he was denied his Sixth Amendment right to the effective assistance

of counsel during plea proceedings.  Dkt. # 1, Pet., at 7; Dkt. # 2, Pet'r's Br., at 10-12.  Perdue

alleges his decision to waive his right to a jury trial and enter a no contest plea was based on

"counsel's inadequate, inaccurate & improper advice & the pressure that [plea counsel] exerted upon

him."  Dkt. # 2, Pet'r's Br., at 11.  To support this claim, Perdue generally relies on the same

22

arguments he made to support his claim that his plea was not knowing and voluntary.  Dkt. # 2,

Pet'r's Br., at 11-12.[9]   The OCCA rejected this claim on direct appeal, reasoning,

> Perdue cannot overcome the presumption that counsel acted in a professionally competent manner.  Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 2066, 80 L. Ed. 2d 674 (1984).  He has not shown that counsel's conduct was "outside the wide range of professionally competent assistance."  Strickland v. Washington, 466 U.S. 668, 689, 104 S. Ct. 2052, 2065, 80 L. Ed. 2d 674 (1984). Furthermore, nothing in the record indicates that there is a reasonable probability that, but for counsel's conduct, Perdue would not have entered a no contest plea and would have insisted on continuing the trial. See Hill v. Lockhart, 474 U.S. 52, 58-59, 106 S. Ct. 366, 370, 88 L. Ed. 2d 203 (1985).

Dkt. # 25-2, OCCA Op., at 3.

As Crow contends, the OCCA correctly identified the legal principles governing Perdue's

Sixth Amendment claim.  In Hill v. Lockhart, 474 U.S. 52, 58 (1985), the Supreme Court held "that

the two-part Strickland v. Washington test applies to challenges to guilty pleas based on ineffective

assistance of counsel."  Strickland requires a defendant to show (1) that counsel's performance was

unreasonable when measured against "prevailing professional norms" and (2) "that there is a

reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding

would have been different."  466 U.S. at 690-91, 694.  The second part of the test determines

whether counsel's alleged errors resulted in prejudice.  Id. at 694.  To demonstrate prejudice in the

context of a guilty plea, a defendant "must show that there is a reasonable probability that, but for

counsel's errors, he would not have pleaded guilty and would have insisted on going to trial."  Hill,

---

[9]     Claims six, seven and eight allege that Baker was ineffective for additional reasons.  But Perdue raised the allegations of ineffectiveness identified in these claims for the first time in his application for postconviction relief, and the state courts addressed these claims under the rubric of Perdue's IAAC claim.  The Court thus addresses claim two here, and addresses claims six, seven and eight in the context of the IAAC claim asserted in claim four.

474 U.S. at 59.  Because the OCCA identified the correct standard governing his Sixth Amendment claim, Perdue cannot show that the OCCA's decision is "contrary to" clearly established federal law.

Nor can he show that the OCCA's decision is based on an objectively unreasonable application of the Strickland/Hill standard or an unreasonable determination of the facts.  Perdue argues that the decision was objectively unreasonable because "it is clearly obvious that counsel's performance was unprofessional, incompetent and ineffective," and "[i]t is obviously clear" that but for counsel's deficient performance and "the pressure that she exerted upon him," he would have insisted on continuing with his trial.  Dkt. # 2, Pet'r's Br., at 11-12.  Perdue's arguments fall short of the high bar imposed by § 2254(d) when a petitioner seeks habeas relief on a claim that counsel's deficient and prejudicial performance renders a state-court judgment invalid.  When a state court applies Strickland's two-prong inquiry, the state court must view counsel's performance with the "strong presumption" that counsel's performance was reasonable "under prevailing professional norms."  Strickland, 466 U.S. at 688-89.  Standing alone, this standard is "highly deferential."  Id. at 689.  Section 2254(d)(1) adds a second layer of deference.  When a federal habeas court reviews a state court's decision on a Strickland claim, the habeas court must grant the state court "a deference and latitude that are not in operation when the case involves review under the Strickland standard itself."  Richter, 562 U.S. at 101.  The only question for the habeas court is whether the state court had a reasonable basis for rejecting the Strickland claim.  Id.  And "[t]he Strickland standard is a general one, so the range of reasonable applications is substantial."  Id. at 105.

Viewing the OCCA's decision with double deference, the Court finds that the decision on Perdue's Sixth Amendment claim was well within the range of reasonable applications.  As just discussed with regard to Perdue's related claim that his plea was not knowing and voluntary, the

record shows that Perdue stated, both in writing and under oath at the plea hearing, that he discussed the consequences of the plea with Baker, that he understood those consequences and the rights he was waiving by entering a plea, and that he was entering the plea of his own free will.  While Baker's alleged ineffectiveness in advising Perdue about the plea presents a different legal issue than his claim that his plea was not knowing and voluntary, the facts in the record that support the OCCA's decision that his plea was both knowing and voluntary severely undermine his related claim that "counsel's inadequate, inaccurate & improper advice & the pressure that she exerted upon him" and "counsel's promise as to the sentence he would receive" rendered his plea unknowing and involuntary.  Dkt. # 2, Pet'r's Br., at 11.  Contrary to Perdue's position it is therefore neither "clearly obvious" nor "obviously clear" that his plea counsel performed deficiently or that he suffered any resulting prejudice.  Dkt. # 2, Pet'r's Br., at 12; see Brady, 397 U.S. at 757 ("A defendant is not entitled to withdraw his plea merely because he discovers long after the plea has been accepted that his calculus misapprehended . . . the likely penalties attached to alternative courses of action."); Tovar Mendoza v. Hatch, 620 F.3d 1261, 1270-71 (10th Cir. 2010) (discussing distinction between "a promise by counsel of a specific sentence" and "a bad guess regarding parole eligibility").

Because Perdue fails to show that the OCCA's decision denying relief on claim two "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement," Richter, 562 U.S. at 103, the Court denies the petition as to claim two.

### 3.    Ineffective assistance of appellate counsel (claim four)

In claim four, Perdue alleges that he was denied his Sixth Amendment right to the effective assistance of appellate counsel because appellate counsel erroneously omitted several issues from

his certiorari appeal that Perdue believes were "stronger" than the issues counsel raised on appeal. Dkt. # 1, Pet., at 10-20; Dkt. # 2, Pet'r's Br., at 16-20.  Specifically, he alleges that appellate counsel should have included those claims that Perdue raises as claims five through eight of the petition: (1) that Judge Denney abused his discretion in failing to recuse himself from Perdue's criminal case based on a conflict of interest (claim five), (2) that Baker performed deficiently and prejudicially in failing to advise Perdue that he could seek Judge Denney's recusal (claim six), (3) that Baker performed deficiently and prejudicially in failing to contest certain portions of the presentence investigation report (claim seven), and (4) that Baker performed deficiently and prejudicially in failing to explain the elements of the charge of manufacturing before Perdue entered his plea.  Dkt. # 2, Pet'r's Br., at 16-29.  Perdue contends that he wrote letters to appellate counsel regarding these claims "but counsel seemed disinterested in raising them" and he further contends that had counsel raised these issues, his appeal would have been granted.  Dkt. # 2, Pet'r's Br., at 16.

Perdue first raised the IAAC claim in his application for postconviction relief.  Dkt. # 26-7, O.R., at 41-51.  The state district court denied relief, and the OCCA affirmed.  After assessing the claims Perdue identified as erroneously omitted, the OCCA concluded that Perdue "failed to show he possessed any viable claim of error omitted by his appellate counsel in the certiorari appeal," or to show that "the District Court erred in not finding ineffective assistance of appellate counsel, or in not otherwise finding merit in his post-conviction claims."  Dkt # 25-5, OCCA Order, at 2-4.

Perdue cannot show that the OCCA's decision is contrary to clearly established federal law. The Supreme Court has held that Strickland's two-part analysis governs the evaluation of an IAAC claim.  Smith v. Robbins, 528 U.S. 259, 285, 288 (2000).  As framed in Robbins, a defendant alleging appellate counsel was ineffective for omitting certain claims must show (1) "that a

reasonably competent attorney" would have determined that the omitted "nonfrivolous issue was clearly stronger than issues that counsel did present," and (2) "a reasonable probability that, but for his counsel's unreasonable failure" to raise the omitted issue or issues, the defendant "would have prevailed on his appeal."   528 U.S. at 285-89.   When applying Strickland to consider whether appellate counsel performed deficiently by omitting certain issues, reviewing courts necessarily must "look to the merits of" the omitted issue or issues.   Miller v. Mullin, 354 F.3d 1288, 1298 (10th Cir. 2004) (quoting Cargle v. Mullin, 317 F.3d 1196, 1202 (10th Cir. 2003)).   As the United States Court of Appeals for the Tenth Circuit has explained:

> If the issue is so plainly meritorious that it would have been unreasonable to winnow it out from an otherwise strong appeal, its omission may directly establish deficient performance; if the omitted issue has merit but is not so compelling, the case for deficient performance is more complicated, requiring an assessment of the issue relative to the rest of the appeal, and deferential consideration must be given to any professional judgment involved in its omission; of course, if the issue is meritless, its omission will not constitute deficient performance.

Cargle, 317 F.3d at 1202 (footnote omitted).

In short, to resolve a claim that appellate counsel provided ineffective assistance, the reviewing court must consider the merits, if any, of the claims the appellant asserts were erroneously omitted.   And that is exactly what the OCCA did in adjudicating Perdue's IAAC claim.   The fact that the OCCA did not cite, or even mention, Strickland or Robbins does not detract from its decision because "neither the reasoning nor the result of the [OCCA's] decision contradicts" the standards set forth in those Supreme Court decisions.   Early, 537 U.S. at 8.

To overcome § 2254(d)'s bar to habeas relief on claim four, Perdue therefore must show either that the OCCA unreasonably applied those standards to the facts of his case or unreasonably determined the facts of his case.   Perdue argues that the OCCA's decision rejecting his IAAC claim

is objectively unreasonable "due to the facts and arguments presented in [claims five through eight] which DO show exactly how appellate counsel's unprofessional conduct adversely affected his appeal outcome." Dkt. # 2, Pet'r's Br., at 19-20.  Analyzing the reasonableness of the OCCA's decision as to claim four thus requires this Court to consider whether it was objectively unreasonable for the OCCA to determine that the claims Perdue asserts in grounds five through eight lacked merit and were reasonably omitted from his appeal.  If it was reasonable for the OCCA to find no merit to these claims, then it was also reasonable for the OCCA to reject Perdue's IAAC claim.

### a.    Recusal (claims five and six)

In claim five, Perdue contends that Judge Denney should have recused from his criminal trial because Judge Denney simultaneously presided over a civil proceeding involving the state's petition to terminate Perdue's parental rights following his arrest for endeavoring to manufacture methamphetamine and endangering his minor child.  Dkt. # 2, Pet'r's Br., at 20-23.  Relatedly, in claim six, Perdue contends that Baker, his plea/trial counsel, performed deficiently and prejudicially by failing to advise Perdue that he could seek Judge Denney's recusal.  Dkt. # 2, Pet'r's Br., at 23-25.

In rejecting these claims, the state district court reasoned that Perdue "present[ed] no case supporting his argument that a Judge who has presided over a deprived action cannot also preside over a criminal action arising out of the same case," and that "while title 22 O.S. § 5576 does prohibit a Judge from presiding over both a preliminary hearing and trial of a criminal defendant, there is no such prohibition regarding a deprived matter and a criminal matter."  Dkt. # 26-7, O.R., at 73.  The OCCA likewise rejected these claims, reasoning as follows:

> The District Court found Petitioner's circumstances and the authorities he cited in his Application were not on point and were not persuasive, as Petitioner "presents no case supporting his argument that a Judge who has presided over a

deprived action cannot also preside over a criminal action arising out of the same case." (O.R. 71.)  Petitioner renews this argument on appeal and relies on identical authorities he presented to the District Court.  In doing so he has neglected to show any error occurring in the District Court's interpretation and application of the authorities before it.  Accordingly, we do not find error in the District Court's conclusion that Petitioner's postconviction application did not substantiate those claims raised in his Grounds 2 and 3.  Cf. P.C.C. v. State, 1981 OK CR 45,  ¶¶ 7-8, 626 P.2d 867, 868-69 (judge, who heard prosecutive merit and certified juvenile as an adult, was not disqualified from presiding over new certification hearing after original certification order had been reversed on appeal, as "mere fact that the judge had heard the evidence once does not show bias," and as the statutory prohibition against the same judge trying a case who had previously conducted the preliminary examination was not analogous or applicable).

Dkt. # 25-5, OCCA Order, at 2.

Perdue contends the OCCA's decision as to these claims was objectively unreasonable.  But neither the law nor the facts support his position.  "Due process guarantees 'an absence of actual bias' on the part of a judge."  Williams v. Pennsylvania, 136 S. Ct. 1899, 1905 (2016) (quoting In re Murchison, 349 U.S. 133, 136 (1955)).[10]  Under clearly established federal law, the question is "not whether a judge harbors an actual, subjective bias, but instead whether, as an objective matter, 'the average judge in his position is "likely" to be neutral, or whether there is an unconstitutional "potential for bias."'"  Williams, 136 S. Ct. at 1905 (quoting Caperton v. A.T. Massey Coal Co., 556 U.S. 868, 881 (2009)).  Under this objective standard, a defendant can prevail on a judicial-bias claim by showing either "actual bias" or the "appearance of bias."  Fero v. Kirby, 39 F.3d 1462, 1478 (10th Cir. 1994).  Nonetheless, "[d]isqualification of a judge for actual bias or prejudice is a serious

_____

[10]   Williams 136 S. Ct. 1899, was decided in June 2016, about three months after the OCCA affirmed the denial of Perdue's application for postconviction relief.  Consequently, Williams itself was not part of the clearly established federal law existing at the time of the OCCA's decision.  In considering the reasonableness of the OCCA's decision, the Court therefore cites Williams only to the extent that Supreme Court decision discusses or relies on legal principles drawn from prior Supreme Court precedent.  See Andrade, 538 U.S. at 71-72 (discussing the meaning of clearly established federal law for purposes of § 2254(d)(1)).

matter and should only be required when the evidence is compelling." Id.  For example, in Williams, the Supreme Court held that "due process requires disqualification of a judge who, in an earlier role as a prosecutor, had significant involvement in making a critical decision in the case."  136 S. Ct. at 1906.

As evidence of Judge Denney's alleged bias, Perdue points to his own statement in the sworn affidavit he attached to his application for postconviction relief, asserting that he "believe[s] [he] received a much harsher sentence because of Judge Denney handling both cases."  Dkt. # 26-7, O.R., at 52; see Dkt. # 2, Pet'r's Br., at 22 (referring to sworn affidavit and asserting he was "prejudiced by the biased [Judge] Denney and said conflict of interest where Judge Denney sentenced him to an outrageous [35-year] sentence in both counts running [consecutive] to an existing [10-year] sentence").  The Court has no reason to question the sincerity of Perdue's belief that his "harsher" sentences resulted from Judge Denney's alleged bias.  But, in light of the record presented in state court, the Court cannot say that it was objectively unreasonable for the OCCA to find this statement less than compelling and to reject Perdue's judicial-bias claim.

The transcript of Perdue's sentencing hearing shows that Judge Denney, at the state's request, took judicial notice of the probable cause affidavit and the presentence investigation report prepared in Perdue's case. Dkt. # 26-5, Tr. Sentencing Hr'g, at 2-3.  The State then presented one witness, Becky Tanner, a child welfare supervisor with the Oklahoma Department of Human Services ("DHS"). Dkt. # 26-5, Tr. Sentencing Hr'g, at 3-4.  Through Tanner, the state introduced a DHS report prepared by a former DHS worker, Lisa Williams, regarding the welfare of Perdue's children, A.P. and N.P, both of whom were placed in state custody following Perdue's arrest. Dkt. # 26-5, Tr. Sentencing Hr'g, at 4-5.  The report, identified as State's Exhibit 1 was admitted without objection.

30

Dkt. # 26-5, Tr. Sentencing Hr'g, at 5.[11]   Perdue's counsel elicited arguably favorable testimony

from Tanner regarding his progress in completing parenting and substance abuse programs while he

was held in the county jail.  Dkt. # 26-5, Tr. Sentencing Hr'g, at 6-8.  Perdue also testified at the

hearing, and counsel elicited testimony from him regarding his efforts to obtain treatment and

counseling in jail.  Dkt. # 26-5, Tr. Sentencing Hr'g, at 11-24.  The state, in contrast, elicited

testimony from Perdue regarding his relatively lengthy criminal history, as documented in the

presentence investigation report, and the particular circumstances that led to his conviction for

endangering a child in this case, namely, the fact that he left a bag of materials that could be or had

been used to manufacture methamphetamine within easy reach of his then four-year-old daughter

and that he and the girl's mother had been routinely using methamphetamine in their daughter's

presence. Dkt. # 26-5, Tr. Sentencing Hr'g, at 25-32.  Finally, Perdue's father testified that he would

be willing and able to help Perdue with child care, housing, and employment upon Perdue's release

from prison.  Dkt. # 26-5, Tr. Sentencing Hr'g, at 34-38.

At the close of evidence, the state urged the trial court to impose two life sentences and to

order them to be served consecutively to each other and consecutively to the 10-year sentence in the

---

[11]   Tanner described State's Exhibit 1 as a report to the district attorney prepared by Williams regarding the welfare of the two Perdue children who were placed in state custody after Perdue and the children's mother, Zeffie Denny were arrested. Dkt. # 26-5, Tr. Sentencing Hr'g, at 4-5.  However, the copy of State's Exhibit 1 included with the sentencing transcript that Respondent submitted to this Court discusses a different case involving adults and children who have no apparent relation to Perdue's case. Dkt. # 26-5, Tr. Sentencing Hr'g, at 60-87.  The state asked no specific questions about the report and defense counsel for Perdue and Denny asked only limited questions about the same. Dkt. # 26-5, Tr. Sentencing Hr'g, at 4-10.  The trial court mentioned that it considered the report in determining Perdue's sentences. Dkt. # 26-5, Tr. Sentencing Hr'g, at 51.  Because it appears reasonable to infer that the report attached to the transcript is not the same exhibit that was presented at sentencing, the Court finds it prudent to disregard the attached exhibit.

2009 case.  Dkt. # 26-5, Sentencing Hr'g, at 38-43.  Perdue's counsel urged the trial court to consider

Perdue's drug addiction and his efforts at rehabilitation and to consider imposing the minimum

sentence.  Dkt. # 26-5, Tr. Sentencing Hr'g, at 46-49.  The trial court stated the following in

imposing Perdue's sentences:

> Mr. Perdue, I agree with much of what [the prosecutor] said here as far as in looking
> at your record it seems that you have been a long-time criminal here, even dating
> back to when you were [a] teenager at 14 years of age beginning your criminal career
> and you have continued that.  You do have quite a serious addiction, however your
> addiction has led to you being a danger to society and a danger even to your children.
> This is a very serious offense that you are faced with that you have entered a no
> contest plea to, that is both the endeavoring to manufacture and the endangerment of
> your young child.  Certainly[,] the Court is mindful in looking at the reports that have
> been presented as part of the evidence today, both the presentence investigation and
> then also the Exhibit 1 that was also admitted through Ms. Tanner of just how
> thoughtless you were as far as carrying out the actions that you did.
>
> I'm going to sentence you on the endeavoring to manufacture.  You're going
> to be sentenced to 35 years of incarceration.  Also, you'll be sentenced to 35 years of
> incarceration on the endangerment of a child, this is after former convictions that you
> have here.  Those particular sentences will be run concurrently, however, both of
> those will be run consecutively to the current incarceration that I know that you're
> getting through at this time, that you're currently incarcerated.  So those will not start
> until after you have completed that sentence.

Dkt. # 26-5, Tr. Sentencing Hr'g, at 51-52.

The trial court's statements at sentencing reflect thoughtful consideration of the underlying

circumstances of Perdue's convictions, his adult criminal history which included two prior felony

convictions for assault and battery, and his seven juvenile adjudications which included

adjudications for burglary, assault and battery, and domestic abuse.  Dkt. # 26-7, O.R. at 18-26.  In

addition, the mother of Perdue's child, who was convicted of the same crimes as Perdue and who

was also subject to the same civil proceeding regarding the termination of parental rights, was

sentenced by Judge Denney at the same hearing as Perdue.  Noting that she had no prior criminal

history, Judge Denney ordered her to serve 20 years' imprisonment on her conviction of endeavoring

to manufacture methamphetamine and four years' imprisonment on her conviction of endangering

a child.  Dkt. # 26-5, Tr. Sentencing Hr'g, at 54-57.

Under these facts, the Court cannot say that the OCCA had no reasonable basis to reject

Perdue's claims (1) that his sentences resulted from actual or apparent judicial bias and that Judge

Denney therefore should have recused from his criminal case and (2) that Baker was ineffective for

failing to advise Perdue that he could seek Judge Denney's recusal.  Likewise, because the OCCA

reasonably determined that these claims lacked merit, it was objectively reasonable for the OCCA

to reject Perdue's claim that appellate counsel was ineffective for failing to raise them on appeal.

### b.      Ineffective assistance of counsel (claims seven and eight)

In claims seven and eight, Perdue alleges that Baker performed deficiently and prejudicially

by (1) refusing to contest certain portions of the presentence investigation report and (2) failing to

explain to Perdue the elements of the manufacturing charge before he entered his no contest plea.

Dkt. # 2, Pet'r's Br., at 25-29.  The OCCA rejected Perdue's claim that appellate counsel should

have argued that Baker was ineffective based on these allegations.  As to the first ground of alleged

ineffectiveness, the OCCA reasoned:

> In Ground 4, Petitioner argued that his trial counsel was ineffective for not
> challenging an error in his presentencing investigation reporting he had previous
> convictions in CF-2009-97 for Count 1, Larceny of an Auto, and Count 2, Assault
> with Intent to Kill.  (O.R. 46.)  Petitioner states Count 1 was dismissed and Count 2
> "was dropped down to Assault and Battery with a Dangerous Weapon."  Petitioner
> therefore contended that his counsel's refusal to correct this information had
> adversely affected his sentencing proceedings.  (O.R. 46-47.)
>
> The only prior felony conviction from CF-2009-97 alleged within Page 2 of
> the State's Information was that of Assault and Battery with a Dangerous Weapon.
> (O.R. 3.)  Thus, contrary to Petitioner's fears, the two reported prior convictions from
> CF-2009-97 mentioned in his presentencing report were not used to enhance his

sentence as Petitioner seems to fear. Additionally, the District Court found that petitioner testified at sentencing, and that his trial counsel, when questioning Petitioner, allowed Petitioner to correct the referenced portion of the presentencing report that was incorrect. (Sent. Tr. 12-13; O.R. 71.) The District Court therefore found no basis in fact for Petitioner's Ground 4 claim, and on appeal, Petitioner has not proven error in that analysis.

Dkt. # 25-5, OCCA Order, at 2-3.

As to the second ground of Baker's alleged ineffectiveness, the OCCA reasoned:

In Ground 5, Petitioner claimed his trial counsel was ineffective in failing to explain the elements of drug manufacturing to him, and that he would not have entered his nolo plea had counsel "advise[d] Petitioner of the crucial elements of the charge." (O.R. 47.) Petitioner further argued, "[H]ad appointed counsel did her job & investigated into this case, she would have found Petitioner's INNOCENCE." (O.R. 47) (emphasis in original). Judge Denney found that claim was wholly inconsistent with the record, as Petitioner had "acknowledged his guilt of the underlying crimes both to the officer leading the investigation and in his presentence investigation." (O.R. 71.)

In appealing these findings, Petitioner, once again, simply repeats those same arguments he made in his Application before the District Court. He thereby neglects to demonstrate or explain how Judge Denney's findings are somehow contrary to the record that was before him. In reviewing the post-conviction appeal record, we find more than ample support for the District Court's decision to deny Petitioner's Ground 5.

Dkt. # 25-5, OCCA Order, at 3-4. Specifically, the OCCA found record support for the denial of claims seven and eight in (1) the transcript of Perdue's preliminary hearing, (2) the portion of the trial transcript recording testimony from the law enforcement officer who led the search of Perdue's home, described items found during the search, and interviewed Perdue during and after the search, (3) the statement of uncontested facts received by Judge Denney at the plea hearing to support a factual basis for Perdue's no contest plea, and (4) Perdue's statements of guilt in the presentence report. Dkt. # 25-5, OCCA Order, at 4.

As previously discussed, under <u>Strickland</u>, a defendant alleging a violation of his Sixth Amendment right to the effective assistance of counsel must show both (1) that counsel's performance was deficient and (2) that counsel's deficient performance resulted in prejudice. <u>Strickland</u>, 466 U.S. at 692. Under the performance prong, a reviewing court must determine whether the defendant has shown that "counsel's representation fell below an objective standard of reasonableness." <u>Id.</u> at 688. And, in making this determination, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance" and "must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." <u>Id.</u> at 689-90. Under the prejudice prong, the court must determine whether the defendant has established "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." <u>Id.</u> at 694.

The OCCA's decision reflects that the OCCA found insufficient factual support for Perdue's allegations that Baker was ineffective for the reasons stated in claims seven and eight. Having reviewed the records of state court proceedings, particularly those portions cited in the OCCA's analysis of these claims, the Court finds nothing objectively unreasonable about the OCCA's understanding of the facts or about its legal conclusion that appellate counsel was not ineffective for failing to argue Baker's ineffectiveness on the bases identified in claims seven and eight.

### c.      Conclusion as to IAAC claim

Based on the foregoing analysis, the Court concludes that it was objectively reasonable for the OCCA to find that claims five, six, seven and eight lacked merit and, thus, to conclude that appellate counsel did not perform deficiently or prejudicially in failing to raise these claims on

appeal. As a result, this Court concludes that § 2254(d) bars relief as to claims four, five, six, seven and eight and therefore denies the petition as to those claims.

### *CONCLUSION*

For the reasons stated herein, Perdue has not shown that he is in custody pursuant to a state-court judgment that was obtained in violation of his rights under the United States Constitution or other federal law. The Court thus concludes that the petition for writ of habeas corpus shall be dismissed, in part, as to claim three which is moot and claim nine which fails to state a cognizable habeas claim, and shall be denied, in part, as to claims one, two, four, five, six, seven and eight because 28 U.S.C. § 2254(d) bars relief as to those claims. Further, because Perdue failed to make a threshold showing that the OCCA either unreasonably applied the law or unreasonably determined the facts, on the basis of the existing state-court record and in light of the fact that neither state court held an evidentiary hearing, the Court denies his request for an evidentiary hearing. Finally, the Court concludes that Perdue has not shown that reasonable jurists would debate this Court's adjudication of his claims and thus declines to issue a certificate of appealability. 28 U.S.C. § 2253(c); Slack v. McDaniel, 529 U.S. 473, 484 (2000).

**ACCORDINGLY, IT IS HEREBY ORDERED** that:

1. Perdue's request for an evidentiary hearing, as asserted in the petition (Dkt. # 1) is **denied**.

2. The petition (Dkt. # 1) is **dismissed, in part**, as to claims three and nine.

3. The petition (Dkt. # 1) is **denied, in part**, as to claims one, two, four, five, six, seven and eight.

4. A certificate of appealability is **denied**.

5.      A separate judgment shall be entered in this matter.

**DATED** this 30th day of August, 2021.

CLAIRE V. EAGAN
UNITED STATES DISTRICT JUDGE